Matthew N. Evans (7051)
James A. Sorenson (12239)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
mevans@rqn.com
jsorenson@rqn.com

*Attorneys for Plaintiffs Timothy Watson Richards and
Laurie O'Keefe Richards Daynes*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY WATSON RICHARDS, an individual, and LAURIE O'KEEFE RICHARDS DAYNES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KARL OHLAND and KATHLEEN OHLAND, as Trustee of the HELENE E. RICHARDS TRUST, dated January 6, 2009, and as personal representatives of THE ESTATE OF HELENE E. RICHARDS, RAYMOND J. OHLAND, an individual, and RICHARD K. OHLAND, individually and in his capacity as the Trustee of the K. O. MINOR'S TRUST, and the A. O. MINOR'S TRUST,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Case No. 2:17-cv-00957-TC<br><br>Judge Tena Campbell<br><br>**(Oral Argument Requested)** |

Plaintiffs Timothy Watson Richards ("**Richards**") and Laurie O'Keefe Richards Daynes ("**Daynes**"; collectively with Richards, "**Plaintiffs**") submit this Memorandum in Opposition to Defendants' Motion to Dismiss, filed by defendants Karl and Kathleen Ohland, as Trustee of the Helene E. Richards Trust (the "**Helene Richards Trust**"), dated January 6, 2009, and as personal representatives of the Estate of Helene E. Richards (the "**Helene Estate**"), Raymond J. Ohland ("**Raymond**"), and Richard K. Ohland ("**Richard Ohland**"), individually and in his capacity as Trustee of the K. O. Minor's Trust (the "**K. O. Trust**"), and the A. O. Minor's Trust (the "**A. O. Trust**"; collectively, "**Defendants**").

## RELIEF REQUESTED

Plaintiffs request that the Court deny Defendants' Motion to Dismiss.  Defendants' first argument seeking to dismiss claims based on the running of statutes of limitation fails as the statutes of limitations should be tolled under the applicable discovery rule because Plaintiffs did not have any knowledge of their claims until they learned of Helene Richards' death in September 2016 and for the reasons set forth below, exceptional circumstances and concealment exist, justifying application of this rule.  Utah cases have held, in situations similar to the facts of this case, where beneficiaries are denied benefits under improper amendments to a trust and do not know about these facts at the time of the amendment, that exceptional circumstances exist. In addition, tolling of a statute of limitation until discovery expressly applies in situations where there is a close familial relationship involved.  Further, when facts concerning possible claims are concealed, it provides an additional basis to extend the statute of limitations.  Accordingly, since the Complaint was filed on August 25, 2017, within one year of Plaintiffs gaining knowledge of their possible claims, any applicable statutes of limitation have not run.

Second, Defendants' attempt to seek dismissal of claims for intentional interference with expected inheritance and conversion also fail as these claims have been adequately plead.  For the reason set forth more fully herein, Plaintiffs request that the Court deny Defendants' Motion to Dismiss in its entirety and allow the case to proceed on its merits.

## STATEMENT OF FACTS

Plaintiffs submit the following Statement of Facts as alleged directly from the Complaint.

1.      Stephen O. Richards ("**Stephen**") and Helene E. Richards ("**Helene**") were husband and wife.  (*See* Compl. at ¶ 9.)

2.      Stephen's father was Joseph Heber Richards, Jr. ("**Joseph Richards**").  (*See* Compl. at ¶ 10.)

3.      Joseph Richards inherited a 20% undivided interest in property located in Carbon County, State of Utah, from his mother Louise O'Dell in or about 1950.  (*See* Compl. at ¶ 11.)

4.      Joseph Richards had two sons, Stephen and Peter W. Richards ("**Peter Richards**"). (*See* Compl. at ¶ 12.)

5.      In 1970, Stephen and Peter Richards each inherited one half of their father's property interest in Carbon County, which amounted to each of them receiving an undivided 10% interest in this property located in Carbon County, State of Utah, described as follows:

> SUNNYSIDE NO. 7, Being the SW ¼ of Section 3, Township 14 South, Range 14 East, SLB&M.
> Also, SUNNYSIDE NO. 4, Being the NW ¼; SUNNYSIDE NO. 5, Being the NE ¼; and SUNNYSIDE NO. 6, Being the SE ¼, all in Section 10, Township 14 South, Range 14 East, SLB&M.
> Tax Serial Nos. 2A-1356-A-4 & 2A-1366-A-1, 2, & 3.
> TOGETHER WITH all improvements, water rights, and appurtenances thereto.
> Land ID Numbers 23085, 33346, 33347, and 33348

(Stephen's interest shall be known hereafter as the "**Richards Property**").

(*See* Compl. at ¶ 13.)

6.      After Stephen owned the Richards Property for approximately 21 years, in 1991, he created a family trust and for purposes of this trust, deeded the Richards Property to Stephen and Helene and then deeded the Richards Property into the Richards Family Trust, as defined below.  (*See* Compl. at ¶ 14.)

7.      On or about October 1, 1991, Stephen and Helene executed an instrument entitled the "Richards Family Trust Agreement" (the "**1991 Trust Document**") which created the Richards Family Trust (the "**Richards Family Trust**").  (*See* Compl. at ¶ 15.)

8.      The Richards Family Trust was amended and restated on September 5, 2006 in a Restated Trust Agreement (the "**2006 Richards Trust Agreement**").  (*See* Compl. at ¶ 16.)

9.      The trust agreements include provisions evidencing that the trustors intended that, upon Stephen and Helene's death, the Richards Property remain in the Richards family and treated the Richards Property as Stephen's separate property in how the Richards Property was handled in the trust agreements.  (*See* Compl. at ¶ 17.)

10.     In the 1991 Trust Document, Stephen and Helene agreed the property would go to Peter Richards upon both of their deaths as follows: "3.3 Gift to Peter.  Upon the last to die of husband and wife, the trustee shall distribute to husband's brother, PETER WATSON RICHARDS, all interests held hereunder or added hereto by the provisions of husband's Will or wife's Will in real estate located in Carbon County, Utah."  (*See* Compl. at ¶ 18.)

11.     Under the 1991 Trust Document, the remainder of Stephen and Helene's property was then to be divided in equal parts to Peter Richards, Karl Joseph Ohland, Johannes Albert Ohland, and Anita Elizabeth Ohland.  (*See* Compl. at ¶ 19.)

12.     In the 2006 Richards Trust Agreement, Stephen and Helene continued to keep the Richards Property and its treatment separate from the remainder of their trust property.  (*See* Compl. at ¶ 20.)

13.     The 2006 Richards Trust Agreement provides: "8.1.1 The Trustees shall distribute to TIMOTHY WATSON RICHARDS and LAURIE O'KEEFE DAYNES, nephew and niece of Stephen O. Richards, all interest of Trustors in that certain real estate located in Carbon County, Utah."  (*See* Compl. at ¶ 21.)

14.     Richards and Daynes are the children of Peter Richards (Stephen's brother).  (*See* Compl. at ¶ 22.)

15.     The 2006 Richards Trust Agreement further provides: "8.1.2 All of the residue of the trust estate shall be distributed equally to TIMOTHY WATSON RICHARDS, KARL JOSEPH OHLAND, JOHANNES ALBERT OHLAND, ANITA ELIZABETH OHLAND and LAURIE O'KEEFE DAYNES."  (*See* Compl. at ¶ 23.)

16.     The 2006 Richards Trust Agreement further restricted the rights of one trustor to transfer property that was the separate property of the other trustor.  (*See* Compl. at ¶ 24.)

17.     Specifically, the second part of paragraph 15.2 of the 2006 Richards Trust Agreement provides: "Only the Trustor who contributed separate or quasi-community property may amend this trust regarding any property owned by such Trustor as his or her separate property or quasi-community property.  Regarding the separate property or quasi-community property of a Trustor, any amendment made by the other Trustor at any time shall have no effect and shall not be taken into account."  (*See* Compl. at ¶ 25.)

18.     Stephen died on December 17, 2008.  (*See* Compl. at ¶ 26.)

19.     No further modifications were made to the Richards Family Trust after the 2006 Richards Trust Agreement was entered into until Stephen's death in December 2008.  (*See* Compl. at ¶ 27.)

20.     However, prior to Stephen's death, on or about May 12, 2008, Stephen allegedly executed a *Delegation of Co-Trustee Powers from Stephen O. Richards to Helene E. Richards* (the "**Trustee Delegation**"), wherein Stephen delegated powers under the 2006 Richards Trust Agreement to Helene.  (*See* Compl. at ¶ 28.)

21.     On November 24, 2008, approximately 23 days before Stephen's death, Helene, through self-dealing, in violation of the 2006 Richards Trust Agreement, and in breach of her fiduciary duty to Stephen, executed a *Warranty Deed* (the "**2008 Warranty Deed**"), wherein she transferred the Richards Property from the Richards Family Trust to "Helene E. Richards, individually." (*See* Compl. at ¶ 29.)

22.     Although Stephen was still alive at this time, he never signed the Warranty Deed and there is no documentation showing that he authorized this transaction.  (*See* Compl. at ¶ 30.)

23.     After Stephen died, Helene created the Helene E. Richards Trust on January 6, 2009 (the "**Helene Richards Trust**").  Upon information and belief, it was amended or restated on or about January 28, 2009 or March 16, 2009 (the "**March Helene Trust Agreement**").  (*See* Compl. at ¶ 31.)

24.     The Helene Richards Trust was amended in a *Second Amendment to the Helene E. Richards Living Trust*, dated December 6, 2011 (the "**2011 Helene Trust Amendment**").  (*See* Compl. at ¶ 32.)

25.     The 2011 Helene Trust Amendment provided that the Richards Property be distributed in equal parts to Richard Ohland, Raymond, A. O., and K. O.  (*See* Compl. at ¶ 33.)

26.     The March Helene Trust Agreement appoints Karl Ohland and Kathleen Ohland as successor co-trustees after Helene's death.  (*See* Compl. at ¶ 34.)

27.     Helene died on November 18, 2013.  (*See* Compl. at ¶ 35.)

28.     Unbeknownst to Plaintiffs, after Helene's Death, Karl and Kathleen, as successor trustees of the Helene Richards Trust, filed a Notice of Trust in the Circuit Court for Sumter County, Florida-Probate Division in *In re: Estate of Helene E. Richards* (the "**Helene Richards Estate**"), Case No. 2014-CP-000039.  Upon information and belief, Karl and Kathleen are also the personal representatives of the Helene Richards Estate.  (*See* Compl. at ¶ 36.)

29.      No notice was ever provided to Richards or Daynes of Helene's death or any estate matter.  (*See* Compl. at ¶ 37.)

30.     On June 3, 2014, Karl and Kathleen, as Trustees of the Helene Richards Trust, executed a Quit Claim Deed wherein they transferred the Richards Property to Richard Ohland, Raymond, the A. O. Trust and the K. O. Trust.  (*See* Quit Claim Deed.)  (*See* Compl. at ¶ 38.)

31.     Richards did not learn that Helene had passed away until September 2016.  He learned this fact when he contacted William Batchelder, another relative and business consultant who held a separate interest in the same Carbon County, Utah property, who informed him that Helene had passed away.  (*See* Compl. at ¶ 39.)

32.     On December 5, 2016, Plaintiffs, through their representative, William Batchelder, made a demand on Defendants to return the Richards Property to them as they were the proper parties entitled to possession of the Richards Property.  (*See* Compl. at ¶ 40.)

33.     Notwithstanding the demand, Defendants failed to return the Richards Property to Plaintiffs and continue to deprive Defendants of their right to the Richards Property.  (*See* Compl. at ¶ 41.)

34.     The Richards Property was obtained by Stephen in 1970, but was owned by Richards family members since a time prior to 1896.  (*See* Compl. at ¶ 43.)

35.     When Helene transferred the Richards Property to herself in 2008, Stephen would have been the owner of the Property for approximately thirty-eight (38) years.  (*See* Compl. at ¶ 44.)

36.     When the Richards Family Trust was created and subsequently amended, the Richards Property was always treated as separate property owned by Stephen and was set aside for the benefit of Richards family members only, first to Peter Richards, and then to his children, the Plaintiffs.  (*See* Compl. at ¶ 45.)

37.     Notwithstanding the clear intent of the Richards Family Trust and based on the fact that the Richards Property was Stephen's separate property, the transfer could only have been effectuated by Stephen.  (*See* Compl. at ¶ 46.)

38.     Based on the terms of the 2006 Richards Trust Agreement, the transfer of the Richards Property to Helene individually on November 24, 2008 should "have no effect and shall not be taken into account."  (*See* Compl. at ¶ 47.)

39.     Accordingly, this Court should set aside that Transfer, effectively returning the Richards Property to the Richards Family Trust, and invalidating any subsequent transfers of the Richards Property.  (*See* Compl. at ¶ 48.)

40.     Once the Richards Property is returned to the Richards Family Trust, pursuant to the terms of the 2006 Richards Trust Agreement, because both Stephen and Helene have died, the Richards Property should be distributed and deeded to Plaintiffs.  (*See* Compl. at ¶ 49.)

41.     The Richards Property was obtained by Stephen in 1970, but was owned by Richards family members since a time prior to 1896.  (*See* Compl. at ¶ 52.)

42.     In May 2008, Helene obtained the Trustee Delegation from Stephen.  (*See* Compl. at ¶ 53.)

43.     When Stephen granted the purported Trustee Delegation to Helene, a fiduciary and confidential relationship was created.  (*See* Compl. at ¶ 54.)

44.     Helene breached her fiduciary duty to Stephen when she used the Trustee Delegation to self-deal and transfer the Richards Property from the Richards Family Trust to herself individually.  (*See* Compl. at ¶ 55.)

45.     Because of the confidential and fiduciary relationship and because the transaction benefited Helene, it is deemed to be unfair and a result of undue influence and/or fraud.  (*See* Compl. at ¶ 56.)

46.     Based on Helene's breach of fiduciary duty, undue influence, and fraud, this Court should set aside the transfer of the Richards Property to Helene, effectively returning the Richards Property to the Richards Family Trust, and invalidating any subsequent transfers of the Richards Property.  (*See* Compl. at ¶ 57.)

47.     Once the Richards Property is returned to the Richards Family Trust, pursuant to the terms of the 2006 Richards Trust Agreement, because both Stephen and Helene have died, the Richards Property should be distributed and deeded to Plaintiffs.  (*See* Compl. at ¶ 58.)

48.     Oregon[1] has adopted the Restatement of Torts with respect to the intentional interference of economic or contractual relations and other similar provisions.  (*See* Compl. at ¶ 61.)

49.     The Restatement (Second) of Torts § 774B provides that a person may recover from another if that person had (1) an expectation for an inheritance, (2) a reasonable certainty that the expectancy would have been realized but for the interference, (3) intentional interference with the expectancy, (4) tortious conduct involved with the interference, such as fraud, duress or undue influence, and (5) damages.  (*See* Compl. at ¶ 62.)

50.     Plaintiffs had an expectation of receiving an inheritance from the Richards Family Trust.  (*See* Compl. at ¶ 63.)

51.     There is little doubt that Plaintiffs would have received an inheritance in the form of the Richards Property had Helene not self-dealt and transferred the Richards Property to herself individually, in violation of the terms of the Richards Family Trust and her fiduciary duty.  (*See* Compl. at ¶ 64.)

52.     Plaintiffs allege that Helene and upon information and belief, some or all of the Defendants intentionally interfered with that expectation for the reasons alleged above, including by having Helene transfer the Richards Property to herself on the eve of Stephen's death and then immediately transferring it into the Helene Richards Trust for the benefit of Defendants. (*See* Compl. at ¶ 65.)

53.     As a direct and proximate cause of the foregoing events, Plaintiffs have suffered damages from the loss of the inheritance which Stephen intended to leave them, thus keeping the Richards Property in the Richards family.  (*See* Compl. at ¶ 66.)

54.     Pursuant to the terms of the Richards Family Trust, the Richards Property was to stay with the Richards family and should have been distributed to Plaintiffs jointly, upon the

---

[1] The 2006 Richards Trust Agreement is governed by the laws of the State of Oregon.

death of Helene.  (*See* Compl. at ¶ 69.)

55.     Because the Richards Property was to be transferred to Plaintiffs under the terms of the Richards Family Trust, Plaintiffs were entitled to actual possession of the Richards Property.  (*See* Compl. at ¶ 70.)

56.     Plaintiffs made demand on Defendants to return the Richards Property to Plaintiffs and Defendants have failed to do so.  (*See* Compl. at ¶ 71.)

57.     Accordingly, Defendants have engaged in a common law conversion of the Richards Property and Plaintiffs' interest in that property.  The reasonable value of the property converted will be determined at trial, but is a value of no less than $4,500,000.  (*See* Compl. at ¶ 72.)

58.     Plaintiff Richards is an individual who resides in Ada County, State of Idaho. (*See* Compl. at ¶ 1.)

59.     Plaintiffs Daynes is an individual who resides in King County, State of Washington.  (*See* Compl. at ¶ 2.)

## ARGUMENT

**I.    DEFENDANT'S MOTION TO DISMISS FAILS TO MEET THE STANDARDS IMPOSED BY RULE 12(B)(6).**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all factual allegations in the Complaint and must resolved all reasonable inferences in the plaintiffs' favor." *Cannon v. Countrywide Bank*, 2011 U.S. Dist. LEXIS 53418 at *3 (D. Utah May 17, 2011) (*citing Arnold v. McClain,* 926 F.2d 963,965 (10th Cir. 1991)). Moreover, dismissal pursuant to Rule 12(b)(6) is a harsh remedy that must be applied cautiously so as to effectuate the spirit of the liberal rules of pleading and protect the interest of justice. *See, Duran v. Carris,* 238 F. 3d 1268, 1270 (10th Cir. 2001). Accordingly, a motion to dismiss is proper only where it clearly "appears beyond doubt that the plaintiff cannot prove any set of facts in support of [its] claim entitling [it] to relief." *Id.; see also, Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1502 (10th Cir. 1995). Dismissal of Plaintiffs' Complaint against Defendants is improper under these standards. First, any argument for dismissal based on a running of a statute of limitation fails as the discovery rule applies in this case. Second, as to Plaintiffs' claims for intentional interference with expected inheritance and conversion, as demonstrated below, Plaintiffs have alleged sufficient facts to support their claims.

**II.   THE STATUTES OF LIMITATION ARE TOLLED UNDER THE DISCOVERY RULE IN THIS CASE.**

Defendants seek dismissal of Plaintiffs' claims arguing that the statutes of limitation have expired on all of Plaintiffs' claims. However, accepting the facts of the Complaint as true, the discovery rule should apply in this case and Plaintiffs' claims should be accepted as timely.

"The discovery rule operates to toll a statute of limitations 'until the discovery of facts forming the basis for the cause of action.'"  *Bowen v. Bowen*, 2001 UT App 352, ¶ 5, 264 P.3d 233, 235 (Utah Ct. App. 2011) (citing *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)). "There are two versions of the rule: (1) the concealment version, requiring the plaintiff to show that he did not know about the events giving rise to his claim due to the 'defendant's concealment or misleading conduct,' and (2) the exceptional circumstances version, requiring the plaintiff to show the existence of exceptional circumstances such that application of the general statute of limitation s would be 'irrational or unjust.'"  *Ockey v. Lehmer*, 2008 UT 37, ¶ 36, 189 P.3d 51, 60 (Utah 2008).

**A.    Exceptional Circumstances Exist in this Case as Plaintiffs did not know that Helene had Died or that the Trust Granting them the Richards Property had been Amended Prior to her Death until September 2016.**

The exceptional circumstance branch of the discovery rule "first requires claimants to demonstrate that they 'did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period.'"  *Bowen*, 2001 UT App 352, at ¶ 6.  "Next, the court must 'apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time.'"  *Id.* (citing *Snow*, 200 UT 20, ¶ 11, 998 P.2d 262).

In *Bowen*, a beneficiary challenged an amendment to a trust that removed her and her brother as a beneficiary more than four years prior to bringing her action.  *Id.*  In evaluating this situation, "[a] determination that a particular situation constitutes an 'exceptional circumstance' involves weighing the equities for and against tolling the statute of limitations."  *Id.* at ¶ 10.  The

- 2 -

court continued, "when a case involves a trust, a trustee cannot take advantage of a statute of limitations defense until something has occurred to give the beneficiary a clear indication that a breach or repudiation has occurred, or, alternatively, the circumstances must be such that [the beneficiary] must be charged with knowledge of such a repudiation or breach." *Id.* (citing *Walker v. Walker*, 404 P2d 253, 257 (Utah 1965)).

In *Bowen*, the court held:

Here, the statute of limitations would operate to bar Analisa's claim when she had no reason to suspect she was the beneficiary of a trust or that she was removed as a beneficiary by the 2001 Amendment, which was not accompanied by a notice by publication or otherwise.  Tonna, on the other hand, faces few evidentiary hurdles posed by the passage of time because the evidence consists of primarily of the documents associated with [the affected] estate rather than fading memories of aging witnesses.

Although one purpose of statutes of limitations is to prevent the unfair litigation of stale claims, we believe the equities in this case weigh in favor of a determination that exceptional circumstances exist that would make a "rigid application of the statute of limitations irrational and unjust."

Accordingly, we determine that the trial court did not err by applying the discovery rule to toll the statute of limitations to May 26, 2006, the date Annalisa admits she first learned of the Trust and that she may have a claim against Tonna as trustee.

*Id.* at ¶ 11 (internal citations omitted).

In addition, the Utah Court of Appeals has held that the discovery rule should expressly apply in familial situations.  "[I]n cases involving claims of trustee misconduct and close familial relationships, the supreme court has found in essence that the balancing test has already been applied and 'to not apply the discovery rule would lead to unjust results.'"  *Davis v. Davis (In re Davis)*, 2011 UT App 343, ¶ 10, 265 P.3d 813, 816 (Utah Ct. App. 2011) (citing *Snow v. Rudd,*

2000 UT 20, ¶ 11, 998 P.2d 262 (Utah 2000))..  "The court reasoned that the discovery rule is necessary in those situations because 'the beneficiary will be less likely to question the motives of the trustee and less likely to sue.'"  *Id.* (citing *Walker*, 404 P.2d at 257.)  "And "[t]herefore, it is appropriate to protect the interests of a beneficiary by applying the discovery rule to toll the statute of limitations until the beneficiary knows or should know of the alleged breach or repudiation."  *Id.*

In this case, Stephen obtained the Richards Property from his father in 1970.  (*See* Statement of Facts ("**SOF**") at ¶ 5.)  After Stephen owned the Richards Property for 21 year, in 1991, Stephen created a family trust and the Richards Property was placed into the Richards Family Trust.  (*See* SOF at ¶ 6.)  Under both the 1991 Trust Document, interim amendments and the 2006 Richards Trust Agreement, they all provided that the trustors intended that, upon Stephen and Helene's death, the Richards Property would remain in the Richards family and the Richard Property was treated as Stephen's separate property.  (*See* SOF at ¶¶ 7-9.)

Indeed in the 2006 Richards Trust Agreement, the last agreement before Stephen died, it provided that upon Stephen and Helene's death, the property would transfer to Plaintiffs.  (*See* SOF at ¶¶ 12-13.)  Accordingly, any claim that Plaintiffs had against the Richards Property would have fully risen when Helene died, not just when Stephen died.

After Stephen's death, Helene moved to Florida and she did not die until five (5) years later on November 18, 2013.  (*See* SOF at ¶ 27.)  As set forth in the Complaint, unbeknownst to Plaintiffs, Karl and Kathleen, as successor trustees of the Helene Richards Trust, filed a Notice of Trust in the Circuit Court for Sumter County, Florida-Probate Division.  (*See* SOF at ¶ 28.)  Even if notice was published in Florida, because Richards lives in Idaho, (*see* SOF at ¶ 58), and

Daynes lives in Washington, (*see* SOF at ¶ 59), Plaintiffs would not have had reasonable notice of this.  Further, no notice was ever provided to Richards or Daynes of Helene's death or any estate matter."  (*See* SOF at ¶ 29.)

Moreover, as set forth in the Complaint, Richards did not learn that Helene had passed away until September 2016.  (*See* SOF at ¶ 31.)  It would have only been at this time that Plaintiffs were able to do the necessary investigation to determine whether or not they had any claims in this case.  It was at this time and only after subsequent investigation that the transfers became known to Plaintiffs, and in December 2016, Plaintiffs made demand for a return of the Richards Property, but Defendants have failed to return the Richards Property to Plaintiffs.  (*See* SOF at ¶¶ 32 – 33.)

Like the *Bowen* case, at the time of Stephen's death, there was no reason for Plaintiffs to suspect that there was any change to the Richards Family Trust because the clear intent of the 1991 Trust Document, all interim amendments and the 2006 Richards Trust Agreement was that the Richards Property was always going to stay in the Richards Family.  Moreover, any rights of Plaintiffs would arise when Helene died, not when Stephen died.  Accordingly, Plaintiffs would not have any reason to investigate or know about their claims until Helene died.  In this case, because Helene was in Florida and no notice was made to Plaintiffs of her death, Plaintiffs were not aware of any potential claims until they had notice of Helene's death in September 2016.

Applying the exceptional circumstances test herein, first, Plaintiffs did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period because they did not know that Helene had died.  Second, applying the hardship test, the harm to Plaintiffs outweighs any harm to Defendants.  If the

discovery rule is not applied, Plaintiffs, who are members of the Richards family, stand to lose property that has been a part of the Richards family and which has been owned in the Richards Family since at least 1896. (*See* SOF at ¶ 41.)  The harm to Defendants is only that they may lose ownership of a property to which they did not pay for and for which they were never entitled.  In addition, Plaintiffs' claims, like in *Bowen*, are based in documents and so there is not significant harm to Defendants in proceeding with the litigation.  Based on the weighing of the hardships, it weighs in favor of Plaintiffs.  In addition, because this is a familial situation, as set forth in *Davis*, this Court must apply the discovery rule to protect Plaintiffs as beneficiaries of the Richards Family Trust.

Under the discovery rule, the statute of limitation runs from discovery of the possible claims.  *Nolan v. Hoopiiaina (In re Hoopiiaina)*, 2006 UT 53, ¶ 36, 144 P.3d 1129, 1140 (Utah 2006).  Applying the discovery rule, the statute would run from September 2016, when Plaintiffs first learned of Helene's death.  Even if Helene made a transfer of the Richards Property in 2008, Plaintiffs knowledge of any potential claims would not have arisen until Helene's death, which would be when they would have been entitled to the Richards Property.  In the Motion to Dismiss, Plaintiffs argue that on the first claim for an alleged breach of trust, a one year statute of limitations applies.  Although Plaintiffs do not concede that this is the applicable statute of limitation, for purposes of this Motion, if this is the case, Plaintiffs did not learn about Helene's death until September 2016 and this Complaint was filed on August 25, 2017, within a year of obtaining knowledge of Helene's death and subsequently, of possible claims.  Accordingly, the action was timely filed.

On the second cause of action, Plaintiffs again argue that a one-year statute of limitations applies.  Accepting this statute of limitation for purposes of this motion only, Plaintiffs timely brought this claim within one year of learning of Helene's death in September 2016.

On the third cause of action, for intentional interference with expected inheritance, Plaintiffs argue that a one year statute of limitation applies to Helene's estate and a four year statute of limitation applies to the other parties.  Because the Complaint was brought within a year of discovery, this claim is also timely.  Finally, Plaintiffs do not set forth the applicable statute of limitation for conversion, but because the claim was brought within one year of gaining knowledge of Helene's death, this cause of action was also timely brought.

Based on the discovery rule, the Complaint should not be dismissed based on statutes of limitation because the discovery rule applies and the Motion to Dismiss must be denied.

**B.**     **Because Facts of the Changes to the Trust were Concealed from Plaintiffs, the Concealment Prong of the Discovery Rule also Applies in this Case.**

"Under the concealment version of the equitable discovery rule, 'the reasonableness of a plaintiff's conduct [is evaluated] in light of the defendant's fraudulent or misleading conduct.'" *In re Hoopiiaina*, 2006 UT 53 at ¶ 36.  "If the plaintiff has filed his claim outside of the statutory period relevant to a certain cause of action, he may raise the concealment version of the discovery rule to toll the statute of limitations if he demonstrates that he 'neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitation period expired' due to the defendant's concealment." *Id.*  If the plaintiff can make such a demonstration, the statute of limitations will not commence running 'until the date the plaintiff possessed actual or constructive knowledge of the facts forming the basis of his or her cause of action.'" *Id.* at ¶ 36.

"It is true that determining when a plaintiff should reasonably have discovered the facts sufficient to 'establish a cause of action and whether a plaintiff acted reasonably under the circumstances are both fact-intensive inquiries that 'preclude [judgment as a matter of law] in all but the clearest of cases.'" *Id.* at ¶ 37.

In this case, without discussing or providing notice to the Richards family, twenty-three (23) days before Stephen's death, Helene transferred the Richards Property from the Richards Family Trust to "Helene E. Richards, individually." (*See* SOF at ¶ 21.) Although Stephen was alive at this time, he never signed the Warranty Deed and there is no documentation showing that Stephen authorized this transaction." (*See* SOF ¶ 22.)

Helene then transferred the Richards Property into the Helene Richards Trust and subsequently the March Helene Trust Agreement for the benefit of her Ohland family relatives and not to the Plaintiffs, who were surviving members of the Richards Family. (*See* SOF at ¶¶ 23 – 25.) No notice was ever provided to Richards or Daynes of Helene's death or any estate matter." (*See* SOF at ¶ 29.) Plaintiffs did not learn about Helene's death until September 2016. (*See* SOF at ¶ 31.) These facts demonstrate that actions affecting Plaintiffs' rights in the Richards Property were concealed from Plaintiffs.

Accepting the allegations of the Complaint as true for purposes of this Motion, based on Defendants' actions, there was no reason for Plaintiffs to investigate potential claims until they knew of Helene's death. It would not have been reasonable or necessary for them to do any public search or to follow up on the matter until they knew that Helene had died, which triggered their right to the Richards Property. Based on the foregoing, the Court should find that the concealment version of the discovery rules applies and that the statute of limitation did not begin

to run until Plaintiffs had knowledge of Helene's death in September 2016.  As set forth under the exceptional circumstances test, because this action was filed on August 25, 2017, within a year of obtaining notice of Helene's death, no statute of limitation could have run barring Plaintiffs' claims.  Accordingly, based on the foregoing, under the concealment version of the discovery rule, the Motion to Dismiss must be denied based on an allegation that the statutes of limitation has run in this case because the statute of limitation is tolled until Plaintiffs had knowledge of Helene's death.

## III.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO ESTABLISH A CLAIM FOR INTERFERENCE WITH EXPECTED INHERITANCE.

Plaintiffs have adequately plead a claim for interference with expected inheritance. Oregon[2] has adopted the Restatement of Torts with respect to the intentional interference of economic or contractual relations and other similar provisions.  *See Allen v. Hall*, 974 P.2d 199, 202 (Ore. 1999).  The Restatement (Second) of Torts § 774B provides that a person may recover from another if that person had (1) an expectation for an inheritance, (2) a reasonable certainty that the expectancy would have been realized but for the interference, (3) intentional interference with the expectancy, (4) tortious conduct involved with the interference, such as fraud, duress or undue influence, and (5) damages.  *See* Restatement (Second) of Torts § 5774B (1979).  These facts have been alleged herein.

First, under the 2006 Richards Trust Agreement, the Richards Property was to go to Plaintiffs upon Stephen's and Helene's death, so they have an expectation for an inheritance. (*See* SOF at ¶¶ 13 and 50.)  Plaintiffs allege that there is little doubt Plaintiffs would have received an inheritance in the form of the Richards Property had Helene not self-dealt and transferred the Richards Property to herself individually, in violation of the terms of the Richards

---

[2] The 2006 Richards Trust Agreement is governed by the laws of the State of Oregon.

Family Trust and her fiduciary duty.  (*See* SOF at ¶ 51.)  Plaintiffs further allege that some or all of the Defendants intentionally interfered with that expectation, including by having Helene transfer the Richards Property on the eve of Stephen's death and then immediately transferring it into the Helene Richards Trust for the benefit of Defendants.  (*See* SOF at ¶ 52.)  As a direct and proximate cause of these tortious actions, Plaintiffs have suffered damages from the loss of the inheritance which Stephen intended to leave them, thus keeping the Richards Property in the Richards Family.  (*See* SOF at ¶ 53.)

Based on these facts, Plaintiffs have adequately plead a claim for intentional interference with expected inheritance and for that reason, the Motion to Dismiss must be denied as to this claim.

## IV.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO ESTABLISH A CLAIM FOR CONVERSION.

The tort of conversion is defined in Oregon as follows:

"(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

*See Becker v. Pac. Forest Indus., Inc.*, 211 P.3d 284, 287 (Ore. Ct. App. 2009).

In this case, Plaintiffs have alleged that under the terms of the Richards Family Trust, the Richards Property was to stay with the Richards family and should have been distributed jointly upon the death of Helene.  (*See* SOF at ¶ 54.).  Plaintiffs have made demand on Defendants to return the Richards Property to Plaintiffs and Defendants have failed to do so.  (*See* SOF at ¶¶ 32-33, 56.)  By maintaining control of the Richards Property, Defendants have engaged in common law conversion of the Richards Property and Plaintiffs' interest in the Richards Property.  Because these facts have been adequately alleged, Defendants' Motion to Dismiss as to the conversion claim fails.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss must be dismissed in its entirety.

DATED this 3rd day of November 2017.

RAY QUINNEY & NEBEKER P.C.


_____/s/ James A. Sorenson_____
Matthew N. Evans
James A. Sorenson
*Attorneys for Plaintiffs Timothy Watson Richards*
*and Laurie O'Keefe Richards Daynes*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to other electronic filing users in this case:

Chase B. Ames
Skoubye Nielson & Johansen LLC
999 Murray Holladay Road, Suite 200
Salt Lake City UT 84117

/s/ Dianne Burton

**1432732**

- 12 -