IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY WATSON RICHARDS, an individual, and LAURIE O'KEEFE RICHARDS DAYNES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>KARL OHLAND and KATHLEEN OHLAND, as Trustee of the HELENE E. RICHARDS TRUST, and as personal representatives of THE ESTATE OF HELENE E. RICHARDS, RAYMOND J. OHLAND, an individual, and RICHARD K. OHLAND, individually and in his capacity as the Trustee of the K.O. MINOR'S TRUST, and the A.O. MINOR'S TRUST,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:17-cv-957-TC |

Plaintiffs seek leave to file a second amended complaint. For the reasons set forth below, their motion (ECF No. 24) is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This case arises out of a family trust which held a parcel of real property in Utah for the Plaintiffs. Plaintiffs contend that the Defendant family members violated that trust and committed fraud when the property was transferred to another trust and then to individuals who were not the intended beneficiaries. The relevant events occurred between 1991 and 2016. Plaintiffs brought suit in 2017, and now request leave to amend their original complaint to

include five causes of action: (1) Fraudulent Concealment; (2) "Quiet Title – Violation of Richards Trust"; (3) "Quiet Title – Undue Influence and Breach of Fiduciary Duty"; (4) Intentional Interference with Expected Inheritance; and (5) Conversion.

According to Defendants, amendment would be futile and so the court should deny the motion. As the basis for their opposition, Defendants contend that three of the claims are time-barred by the applicable statutes of limitations and that the other two claims do not state a claim upon which relief can be granted.

## FACTUAL ALLEGATIONS

All of the facts set forth below are taken from Plaintiffs' proposed second amended complaint (ECF No. 24-1). The series of events is lengthy and complicated, so the court only discusses the facts necessary to provide context and decide the motion.

The property at issue is located in Carbon County, Utah, and has been in the Richards family for decades. The Plaintiffs are the children of Peter Richards, who, along with his brother Stephen Richards, inherited the property in 1970. In 1991, Stephen (the Plaintiffs' uncle) deeded his interest in the property (hereinafter called the **"Richards Property"**) to himself and his wife, Helene Richards. They put the property in a family trust (along with other assets) by executing the "Richards Family Trust Agreement" (the **"1991 Trust Document"**). Stephen and Helene were co-trustees of the trust, called the **"Richards Family Trust."**

The 1991 Trust Document contained language that treated the Richards Property as Stephen's separate property. The 1991 Trust Document was amended and restated in the **2006 Richards Trust Agreement.** According to Plaintiffs, "The 2006 Richards Trust Agreement provided that certain assets of Stephen and Helene would be distributed to both heirs of Stephen, including [the Plaintiffs], and heirs of Helene, including [the Defendants]." (Proposed 2d Am.

Compl. ¶ 20, ECF No. 24-1.) But even given the general plan that the trust assets would go to both Stephen's heirs and Helene's heirs, the 2006 Richards Trust Agreement treated the Richards Property as Stephen's separate property that would not be distributed to Helene's heirs. The agreement contains the following provision: "The Trustees shall distribute to TIMOTHY WATSON RICHARDS and LAURIE O'KEEFE DAVIS, nephew and niece of Stephen O. Richards, all interest of Trustors in that certain real estate located in Carbon County, Utah." (Id. ¶ 25 (quoting Section 8.1.1 of 2006 Richards Trust Agreement).)

The agreement also restricted the rights of one trustor (e.g., Helene) to transfer property that was property of the other trustor (e.g., Stephen). Specifically:

> Only the Trustor who contributed separate or quasi-community property may amend this trust regarding any property owned by such Trustor as his or her separate property or quasi-community property. … [A]ny amendment made by the other Trustor at any time shall have no effect and shall not be taken into account.

(2006 Richards Trust Agreement ¶ 15.2, attached as Ex. C to Proposed Am. 2nd Compl.) In other words, the agreement barred Helene from unilaterally amending the agreement to change the intended recipients of the Richards Property.

Stephen died on December 17, 2008. But in May 2008, before he died, he "*allegedly* executed a Delegation of Co-Trustee Powers from Stephen O. Richards to Helene E. Richards" in which he delegated his trustee powers to Helene. (Proposed 2nd Am. Compl. ¶ 32 (emphasis added).) Twenty-three days before Stephen died, on November 24, 2008, Helene executed a Warranty Deed which transferred the Richards Property from the Richard Family Trust to herself. That warranty deed was recorded in Carbon County, Utah on December 3, 2008. Plaintiffs alleged that this act was "self-dealing, in violation of the 2006 Richards Trust Agreement, and in breach of her fiduciary duty to Stephen." (Id. ¶ 33.) "Although Stephen was

3

still alive at this time, he never signed the Warranty Deed and there is no documentation showing that he authorized this transaction." (Id. ¶ 34.)

After Stephen died, Helene created the "Helene Richards Trust" and included the Richards Property in it. The Helene Richards Trust, as amended in 2011, directed that the Richards Property be distributed in equal parts to Richards Ohland, Raymond Ohland, A.O. and K.O.

Helene died on November 18, 2013. After Helene's death, Defendants Karl Ohland and Kathleen Ohland were appointed successor co-trustees. Plaintiffs were not notified that Helene had died. They did not learn of Helene's death until three years later, in September 2016, through independent channels.

As co-trustees, Karl and Kathleen "had access to Helene's files, reviewed them, and had access to the 2006 Richards Trust Agreement and other related documents which informed them that Plaintiffs were potential creditors or claimants of Helene's Trust and Estate." (Id. ¶ 44.) They knew that Plaintiffs were family members and Stephen's heirs and that Plaintiffs had an interest in the Richards Property under the 2006 Richards Trust Agreement.

On February 3, 2014, Karl and Kathleen filed a Notice of Trust in Florida (where Helene lived and died), which said that notice was "mailed to attorney for the Personal Representative [i.e., Karl and Kathleen]." (Notice of Trust, attached as Ex. J to Proposed 2nd Am. Compl. and quoted in ¶ 49.) "The Notice of Trust was only mailed to McLin Burnsed, Karl and Kathleen's attorney, who drafted and prepared all the prior Helene trust documents, and had information concerning the prior trust agreements and ownership of prior trust assets, but never had his client provide any notice to potential creditors, including Plaintiffs, of Helene's death, her Trust, or her Estate." (Proposed 2nd Am. Compl. ¶ 50.) No other party received notice. And then, only one

4

day later, on February 4, 2014, the trust proceeding was closed. The Richards Property was distributed to Defendants Richards Ohland, Raymond Ohland, A.O. and K.O. According to Plaintiffs, Karl and Kathleen concealed that information from Plaintiffs in order to let Plaintiffs' claims lapse.

On August 25, 2017, less than one year after learning of Helene's death, the Plaintiffs filed this action.

## ANALYSIS

### Standard of Review

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the court should freely give leave to amend "when justice so requires." Leave should be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, <u>undue prejudice</u> to the opposing party by virtue of allowance of the amendment, [or] <u>futility of amendment</u> …." <u>Foman v. Davis</u>, 371 U.S. 178, 192 (1962) (emphasis added).

Defendants oppose the motion to amend, contending they will be unduly prejudiced and that amendment would be futile because it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>Gohier v. Enright</u>, 186 F.3d 1216, 1218 (10th Cir. 1999) (holding that a proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including failure to state a claim for relief that can be granted). When evaluating a complaint under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and construe allegations in the light most favorable to the non-movant. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). If the proposed complaint states a claim for relief

that is plausible on its face, the motion for leave to amend should be granted. See id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**Defendants' Alleged Undue Prejudice**

According to the Defendants, they will be unduly prejudiced for two reasons.

First, they contend that two witnesses are no longer alive and, accordingly, "there is little reliable evidence" of the events subject to Plaintiffs' proposed complaint. (Defs.' Opp'n Mot. File 2nd Am. Compl. at 4, ECF No. 25.) But the court is not evaluating evidence at this stage in the proceedings. Whether Plaintiffs have a proof problem is not an issue that can be determined in this context.

Second, they assert that if the Plaintiffs are allowed to continue with their proposed claims, Defendants will incur "significant costs, expenses and attorney fees" defending against claims that they believe have no merit. (Id.) That is not a sufficient reason to deny leave to amend. See, e.g., Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir. 2009) ("the expenditure of time, money, and effort alone is not grounds for a finding of prejudice" under Rule 15(a)(2)); Minter v. Prime Equip. Co., 451 F.3d 1196, 1207 (10th Cir. 2007) ("Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'") (quoting Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971)).

**Sufficiency of Allegations**

**1.      Fraudulent Concealment**

Plaintiffs propose to add a claim for fraudulent concealment to their complaint. In that claim, they allege that Karl Ohland and Kathleen Ohland intentionally concealed the death of Helene and the subsequent trust proceedings in Florida.

6

Under Florida law (which applies based on the trust's choice of law provision), the Plaintiffs will prevail on their claim for fraudulent concealment if they establish five elements: (1) the Defendants concealed or failed to disclose a material fact; (2) the Defendants knew or should have known the material fact should be disclosed; (3) the Defendants knew their concealment of, or failure to disclose, the material fact would induce the Plaintiffs to act (or fail to act, as is alleged here); (4) the Defendants had a duty to disclose the material fact; and (5) the Plaintiffs detrimentally relied on the misinformation. Hess v. Philip Morris USA, Inc., 175 So. 3d 687, 691 (Fla. 2015). Defendants assert that allowing the amendment would be futile because the Plaintiffs' proposed complaint does not plead facts to establish any of the five elements.

Concerning the first element, Plaintiffs allege that Defendants purposely concealed the fact of Helene's death and notice of the subsequent trust proceeding. Clearly both events were material.

Defendants claim that the allegations fail to establish the second, third, and fourth elements because "Plaintiffs were neither creditors nor beneficiaries of the estate. . . ." (Defs.' Opp'n Mot. Leave to File 2nd Am. Compl. at 9.) But Plaintiffs allege that they were. To find otherwise would require a factual determination. Because the court is reviewing the futility of amendment under the 12(b)(6) standard, the Plaintiffs' allegations are sufficient.

Finally, Plaintiffs clearly allege facts establishing the last element. They were unable to file a timely cause of action because of the Defendants' concealment.

Because the Plaintiffs' allegations adequately plead fraudulent concealment, the court grants them leave to file their new claim.

**2.     Conversion**

Prevailing on a claim for conversion requires a showing that the defendant has asserted a

"right of dominion over a chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession to which the owner is entitled[.]" City of Cars, Inc. v. Simms, 526 S. 2d 119, 120 (Fla. Dist. Ct. App. 1988) (emphasis added). Stated another way, the tort of conversion "may be established upon a showing of the taking by the defendant of personal property belonging to the plaintiff upon a mistaken belief as to the legal right of the defendant to the converted property." Ciamar March, Inc. v. Monteiro Da Costa, 508 So. 2d 1282, 1283–84 (Fla. Dist. Ct. App. 1987) (emphasis added). The applicable statute of limitations contains similar language, for it requires the tort for conversion to be brought "within three years . . . for taking, detaining, or injuring personal property." Utah Code Ann. § 78B-2-305(2) (LexisNexis 2017) (emphasis added).[1]

Plaintiffs' claim for conversion of real property is inconsistent with the tort's application to a "chattel"[2] or "personal property." But the parties did not address this potential problem in their briefs (instead, they discuss whether facts establishing ownership of the Property have been adequately pleaded). The court is concerned that the nature of Plaintiffs' claim falls outside the definition of conversion, but because the parties have not briefed the issue, the court denies the motion to amend the complaint without prejudice for the claim for conversion.

**Statute of Limitations**

Plaintiffs also assert three trust-related claims: (1) "Quiet Title — Violation of Richards

---

[1] See Ockey v. Lehmer, 189 P.3d 51, 60 (Utah 2008) (noting that Utah Code Ann. § 78B-2-305(2) provides the statute of limitations for conversion).

[2] "Chattel" is defined as "Movable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." Black's Law Dictionary (10th ed. 2014) (emphasis added).

8

Trust";[3] (2) "Quiet Title — Undue Influence and Breach of Fiduciary Duty";[4] and (3) "Intentional Interference with Expected Inheritance." Defendants challenge these claims on the basis that they are barred by the Utah statutes of limitations.

Although the Helene Richards Trust document provides that "[a]ll matters involving the validity and interpretation of this Trust are to be governed by Florida,"[5] the court agrees with Defendants that Utah's statutes of limitations apply to the Plaintiffs' claims. "A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state," in this case Utah. Dow Chem. Corp. v. Weevil-Cide Co., Inc., 897 F.2d 481, 483–84 (10th Cir. 1990). "Utah follows the majority position that limitation periods are generally procedural in nature. Therefore, as a general rule, Utah's statutes of limitations apply to actions brought in Utah." Financial Bancorp, Inc. v. Pingree & Dahle, Inc., 880 P.2d 14, 16 (Utah Ct. App. 1994) (internal citation omitted). This is so even in light of a choice-of-law provision. According to the Tenth Circuit, unless the choice of law provision expressly incorporates the selected state's statutes of limitations, the forum's statutes of limitations apply. FDIC v. Petersen, 770 F.2d 141, 142-43 (10th Cir. 1985), cited in Financial Bancorp, 880 P.2d at 16 n.2; see also Lujan v. Regents of Univ. of Calif., 69 F.3d 1511, 1516 (10th Cir. 1995) ("statutes of limitations are procedural for purposes of a contractual choice-of-law provision")

---

[3]A true quiet title action is not subject to a statute of limitations. See Bangerter v. Petty, 225 P.3d 874, 878 (Utah 2009); In re: Hoopiiaina Trust, 144 P.3d 1129, 1137 (Utah 2006). But Plaintiffs do not assert a true quiet title claim, because they seek affirmative relief. "If the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute of limitations applicable to the other claim will also apply to the quiet title claim." Id. Accordingly, Plaintiffs are subject to the relevant statute of limitations for the underlying relief they seek.

[4]See id.

[5]Pls.' Mot. Leave File 2nd Am. Compl. at 2, ECF No. 24 (quoting Helene E. Richards Trust ¶ 16.5).

(citing id.). The trust document's choice-of-law provision does not expressly select Florida's statutes of limitations. Accordingly, Utah's apply.

Defendants contend that Plaintiffs' cause of action titled "Quiet Title–Violation of Richards Trust" is subject to the one-year statute of limitations in Utah Code Ann. § 75-7-1005(3) (LexisNexis 2017). (See Defs.' Mot. Dismiss at 8–9, ECF No. 9 (argument incorporated by reference into Defs.' Opp'n Mot. Leave to File 2nd Am. Compl., ECF No. 25 at p. 2 n.2, p. 5 n.5).) The other causes of action (Undue Influence, Breach of Fiduciary Duty, and Intentional Interference), they say, are subject to the four-year statute of limitations found in Utah Code Ann. § 78B-2-307(3) (LexisNexis 2017). (Id. at 9–10.) Additionally, Defendants maintain that Utah's non-claim statute required Plaintiffs to bring their claims against Helene Richards' estate no later than November 18, 2014, one year after her death.

Plaintiffs respond that although the claims were filed outside the statute of limitations, those time periods have been tolled because Defendants intentionally concealed the death of Helene and the administration of her trust in Florida.

1. **Equitable Tolling Under the Discovery Rule**

Utah law provides for equitable tolling of statutes of limitations when material facts are concealed. "The discovery rule operates to toll a statute of limitations 'until the discovery of facts forming the basis for the cause of action.'" Bowen v. Bowen, 264 P.3d 233, 235 (Utah Ct. App. 2011) (quoting Myers v. McDonald, 635 P.2d 84, 86 (Utah 1981)). "There are two versions of the rule: (1) the concealment version, requiring the plaintiff to show that he did not know about the events giving rise to his claim due to the 'defendant's concealment or misleading conduct,' and (2) the exceptional circumstances version, requiring the plaintiff to show the existence of exceptional circumstances such that application of the general statute of limitations

10

would be 'irrational or unjust.'" Ockey v. Lehmer, 189 P.3d 51, 60 (Utah 2008) (quoting Russell Packard Dev., Inc. v. Carson, 108 P.3d 741, 747 (2005)). Plaintiffs rely on both versions.

    a. Concealment

Under this prong of the discovery rule, the plaintiff must show that, as a result of the defendant's concealment, he neither discovered nor reasonably should have discovered the facts underlying his cause of action before the statute of limitations period expired. In re: Hoopiiaina Trust, 144 P.3d 1129, 1140 (Utah 2006). If the plaintiff can demonstrate those elements, the statute of limitations does not begin to run "until the date the plaintiff possessed actual or constructive knowledge of the facts forming the basis of his or her cause of action." Id. at 1141.

"'[T]he reasonableness of a plaintiff's conduct [is evaluated] in light of the defendant's fraudulent or misleading conduct.'" Id. at 1140 (quoting Russell Packard Dev.,108 P.3d at 747) (alteration in original). This is a fact-intensive inquiry not suited to a motion to dismiss except in "'the clearest of cases.'" Id. at 1141 (quoting Russell Packard Dev., 108 P.3d at 751).

Plaintiffs adequately allege that there was no reason for them to investigate potential claims until they knew of Helene's death. Plaintiffs had no notice of Helene's subsequent changes to the trust or transfer of the property. And they had no timely notice of Helene's death or the subsequent trust action that Karl and Kathleen filed in Florida.

Defendants claim that even if Plaintiffs did not have actual notice, they had constructive notice of their claims in 2008. On December 3, 2008, in Carbon County, Utah, Helene recorded the deed showing Helene's transfer of the property to herself. That, they argue, provided constructive notice to the Plaintiffs who then had the information needed to investigate. They cite to Helfrich v. Adams, 299 P.3d 2 (Utah Ct. App. 2013), to support their position.

11

In Helfrich, the court found that transfer of property triggered the running of the statute of limitations. But by the time the suit was filed, the statute of limitations had expired. The court ruled, under the facts of the case, that the recorded document (a quitclaim deed triggering a claim for money owed in a promissory note) provided constructive notice to the plaintiff. Id. at 6. The court cited to Utah Code Ann. § 57-3-102(1), under which a recorded document "from the time of recording . . . impart[s] notice to all persons of their contents." Then the court rejected the plaintiff's argument that the statute should be equitably tolled.

Helfrich is not helpful because the court decided the matter only after hearing facts presented in a summary judgment motion. Here, as noted above, the court cannot evaluate reasonableness in the context of a motion to dismiss. Moreover, the intricacies of trust law are not before the court and cannot be used here to determine whether, even if Plaintiffs had constructive notice of the quitclaim transfer, knowledge of the transfer would necessarily raise concerns.[6] The same applies to Defendants' contention that Plaintiffs had a contingent interest in the property under the trust and so were obligated to track recordings in Carbon County. The court may not speculate about the nature of Plaintiffs' interest or the effect, if any, the recording would have on Plaintiffs' rights under the trust.

    b. Exceptional Circumstances

The exceptional circumstances branch of the discovery rule "first requires claimants to demonstrate that they 'did not know and could not reasonably have discovered the facts underlying the cause of action in time to commence an action within that period.'" Bowen, 265

---

[6] During the May 30, 2018 hearing, counsel for Plaintiffs provided examples of why the quitclaim deed would not have triggered a duty to inquire and why the Defendants' arguments raise questions of fact. (See Tr. of May 30, 2018 Mot. Hr'g at 36–38, ECF No. 31). In short, the question of whether knowledge of the transfer was sufficient to trigger a duty to inquire further is based on an evaluation of what was reasonable. That is not something the court can evaluate at this early stage.

P.3d at 235. "Next, the court must 'apply a balancing test to weigh the hardship imposed on the claimant by the application of the statute of limitations against any prejudice to the defendant resulting from the passage of time." Id.

Utah courts are particularly wary of time bars in disputes involving family trusts. Importantly,

> when a case involves a trust, a trustee cannot take advantage of a statute of limitations defense until something has occurred to give the beneficiary a clear indication that a breach or repudiation has occurred, or, alternatively, the circumstances must be such that [the beneficiary] must be charged with knowledge of such a repudiation or breach.

Id. (emphasis added).

Plaintiffs did not have a clear indication of repudiation or breach of the Richards Family Trust. According to the 2006 Richards Trust Agreement attached to the proposed amended complaint, only upon Stephen and Helene's death would the property transfer to Plaintiffs. (See Proposed 2nd Am. Compl. ¶ 21.) Plaintiffs contend that, in the document they understood to govern the property, any claim Plaintiffs had against the Richards Property would have arisen only after Helene died.[7]

Given concerns unique to family trust disputes, "in cases involving claims of trustee misconduct and close familial relationships, the [Utah Supreme Court] has found in essence that the balancing test has already been applied and 'to not apply the discovery rule would lead to unjust results.'" Davis v. Davis, 265 P.3d 813, 816 (Utah Ct. App. 2011) (quoting Snow v. Rudd, 998 P.2d 262, 266 (Utah 2000)). This is so because "the beneficiary will be less likely to question the motives of the trustee and less likely to sue." Id.

---

[7] To the extent the Defendants challenge this conclusion, they do so without any legal analysis. More importantly, the issue is factual and involves analysis of trust law issues, neither of which are before the court.

The Davis court was referring to the Utah Supreme Court's decision in Snow v. Rudd. There, the Court articulated its general conclusion that exceptional circumstances exist in a situation like the one now before the court.

> [W]here a trustee is sued by a beneficiary or claims a violation of the trust, it constitutes an 'exceptional circumstance' calling for application of the discovery rule. We have held that under certain 'exceptional circumstances' we will find that a rigid application of the statute of limitations may be 'irrational and unjust,' and thus make the discovery rule available.

998 P.2d 262, 266 (Utah 2000).

Even if the court balances the equities under the specific facts of the case, the court finds that a "rigid application of the statute of limitations" would be "irrational and unjust" in this case. Plaintiffs seek return of property that has been in their side of the family for decades. According to the allegations, they were the intended beneficiaries of property that was carefully set aside from other property in the trust. They have alleged actions that would constitute a serious breach of trust. And, according to them, the property is very valuable. (See Proposed 2nd Am. Compl. ¶ 102 (alleging value of property as no less than $4.5 million).) On the flip side, Defendants point out that two key witnesses are deceased. But other witnesses exist and much of the proof is contained in documents. To the extent witnesses are missing, that is a problem for both sides, and because Plaintiffs bear the burden of proof, that factor arguably weighs even more against them. Under the circumstances, the equities weigh in Plaintiffs' favor.

For the foregoing reasons, Plaintiffs are entitled to rely on both versions of the discovery rule. Consequently, the statutes of limitations did not begin to run until Plaintiffs learned in 2016 of Helene's death, and Plaintiffs claims are timely.

**2.     Utah's Non-Claim Statute and Statutory Tolling for Fraud**

Defendants insist that Utah's non-claim statute provides an absolute bar to Plaintiffs'

quiet title claims and may not be tolled under any circumstances. That statute provides in relevant part as follows:

> All claims against a decedent's estate which arose before the death of the decedent …, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented within the earlier of the following dates:
> (a) <u>one year after the decedent's death</u>; or
> (b) Within the time provided by Subsection 75-3-801(2) for creditors who are given actual notice, and where notice is published, within the time in Subsection 75-3-801(1) for all claims barred by publication.

Utah Code Ann. § 75-3-803 (LexisNexis 2017) (emphasis added).

According to Defendants, because the Plaintiffs filed their claims more than one year after Helene died, those claims are barred. Defendants also cite to <u>In re: Ostler</u>, 227 P.3d 242 (Utah 2009), to support their position that the one-year time limitation is absolute and not subject to tolling. The Utah Supreme Court in <u>Ostler</u> held that the non-claim statute is not a statute of limitations but rather a jurisdictional statute of repose and construed the statute "as a jurisdictional bar not subject to tolling during minority under the general tolling statute." <u>Id.</u> at 246.[8]

Although <u>Ostler</u> only addressed the minority tolling statute (tolling any cause of action by a person who has not reached the age of majority), Defendants ask the court to extend <u>Ostler</u> to bar application of the statutory tolling provision in § 75-1-106 ("Effect of Fraud or Evasion") and the equitable tolling doctrine discussed earlier. It is not clear that <u>Ostler</u> goes that far. The Utah Supreme Court limited its analysis to the minority tolling provision (inapplicable here) and,

---

[8] Arguably Florida's non-claim statute of repose (Fla. Stat. § 733.710) applies. The Utah Supreme Court in <u>Ostler</u> held that Utah's non-claim statute is not a statute of limitations. This suggests that the statute is substantive law, in which case the choice-of-law provision dictates application of Florida law. This issue was not briefed, but it appears the result would be the same. Although § 733.710 is a two-year statute of repose, exceptions exist "upon grounds of fraud, estoppel, or insufficient notice of the claim period." <u>United Bank v. Estate of Frazee</u>, 197 So. 3d 1190, 1191 (Fla. Dist. Ct. 2016) (quoting and analyzing Fla. Stat. § 733.702(3) and § 733.710). (<u>See also</u> Pls.' Reply Supp. Mot. Leave to File 2nd Am. Compl. at 9, ECF No. 26.)

in a footnote, expressly declined to address the issue of "whether, under the facts alleged, the Estate is equitably estopped from asserting the statute of limitations as a defense where specific representations were made that resulted in the delay in filing the claim." Id. at 245 n.2.

In any event, Plaintiffs convincingly oppose Defendants' reliance on Ostler by pointing to the statutory provision addressing the effect of fraud or evasion in connection with Utah's Uniform Probate Code.

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within three years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud….

Utah Code Ann. § 75-1-106 (LexisNexis 2017) (emphasis added). As stated before, the Plaintiffs have adequately alleged fraud. Under § 75-1-106, because Plaintiffs discovered the fraud no earlier than 2016, when they learned of Helene's death, their claims (filed in 2017) fall within the three-year limitation period.

The court reaches this conclusion even assuming Ostler held that Utah's non-claim statute is not subject to common law equitable tolling. First, the case of In re: Estate of Ongaro, 998 P.2d 1097 (Colo. 2000), is persuasive. There, the court held that the Colorado non-claim statute could not be tolled. But it also noted that Colorado's non-claim statute does not foreclose a remedy to a claimant if the personal representative's failure to notify constituted fraud. Citing a Colorado statute identical in material respects to Utah's § 75-1-106, the court recognized that its holding

> may appear to provide an incentive to some personal representatives not to provide known creditors with written notice of the deadline for presenting claims. There is, however, a statutory disincentive. … [S]hould a personal representative's conduct rise to

16

the level of fraud, section 15-10-106, 5 C.R.S. (1999), provides a remedy to injured claimants.

Id. at 1105. Second, the case of Berneau v. Martino, 223 P.3d 1128 (Utah 2009), is instructive. The Utah Supreme Court allowed the plaintiff, who was unaware of the person's death, to proceed under an exception in the non-claim statute under which he would normally be barred. Faced with unusual circumstances, the Court said,

> we have three choices: the court could closely adhere to the statute which in its wording makes no allowance for the unusual circumstances of the death not being discovered until after the period of limitations had run; usurp legislative prerogative by carving out an exception to statutory language; or judicial apply the equitable discovery rule. We turn to the most compelling option, the equitable discovery rule.

Id. at 1134 (internal quotation marks and citation omitted).[9]

Given the distinguishing characteristics of Ostler as well as the statutory provision tolling causes of action in the case of fraud (Utah Code Ann. § 75-1-106), the court holds that Plaintiffs claims are not barred by Utah's non-claim statute.

## ORDER

For the foregoing reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 24) is GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

1. Plaintiffs may amend their complaint to assert Claim 1 (Fraudulent Concealment), Claim 2 ("Quiet Title – Violation of Richards Trust"), Claim 3 ("Quiet Title – Undue Influence and Breach of Fiduciary Duty"), and Claim 4 (Intentional Interference with Expected Inheritance).

---

[9] Citing to the United States Supreme Court decision in Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478 (1988), Plaintiffs contend that the bar would violate their due process rights if applied in the absence of notice. Tulsa is distinguishable. Due process concerns arose only because state action was involved. If a statutory bar is self-executing (as the non-claim statute is here), no state action exists to trigger a due process claim. Id. at 486–87.

2. Plaintiffs' request to bring a claim for conversion (Claim 5) is DENIED without prejudice.

3. Plaintiffs are directed to file their second amended complaint as soon as practicable.

DATED this 13th day of August, 2018.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge